13 A.3d 1004 (2011)
LT INTERNATIONAL BEAUTY SCHOOL, INC., Petitioner
v.
COMMONWEALTH of Pennsylvania, BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, STATE BOARD OF COSMETOLOGY, Respondent.
Commonwealth Court of Pennsylvania.
Submitted on Briefs November 19, 2010.
Decided January 28, 2011.
*1006 David P. Temple, Philadelphia, for petitioner.
David Markowitz, Assistant Counsel, Harrisburg, for respondent.
BEFORE: LEADBETTER, President Judge, PELLEGRINI, Judge, and FRIEDMAN, Senior Judge.
OPINION BY Senior Judge FRIEDMAN.
LT International Beauty School, Inc. (LT) petitions for review of the April 19, 2010, order of the State Board of Cosmetology (Board) imposing a civil penalty in the amount of $2,950 for violations of the Beauty Culture Law (Law)[1] and various Board regulations. We reverse in part and affirm in part.
LT owns and operates two beauty schools, located at 2522 North Broad Street, Philadelphia (School One) and 830 North Broad Street, Philadelphia (School Two). (Board's Findings of Fact, No. 1.) On August 11, 2006, Joseph Slavin and Edward Krystopa, Regulatory Enforcement Inspectors for the Bureau of Enforcement and Investigation, conducted an inspection of School One. (Board's Findings of Fact, No. 4.) Slavin and Krystopa's inspection report indicated that School *1007 One failed the inspection because the school did not have the following equipment required by 49 Pa.Code § 7.114(a):[2] four closed containers for soiled linen; three closed waste containers; a closed container for clean towels; and three timer clocks. (N.T., 6/20/08, Exhibit C-1.)
The following year, on July 27, 2007, Slavin and Krystopa conducted another inspection of School One. (Board's Findings of Fact, No. 9.) School One failed this inspection because Slavin and Krystopa indicated that they found only five hairdryers instead of eight and because four students did not have complete kits containing all equipment and supplies required by 49 Pa.Code § 7.115(a).[3] (N.T., 6/20/08, Exhibit C-2.)
On August 1, 2007, Slavin and Krystopa inspected School Two. (Board's Findings of Fact, No. 12.) Slavin and Krystopa's inspection report indicated the following violations: an unlicensed person was teaching in the school in violation of section 2 of the Law, 63 P.S. § 508; there was not a sign displayed near the entrance of the school stating that all work in the school was done by students as required by 49 Pa.Code § 7.120(b);[4] a pedicure sink was in an unsanitary condition in violation of 49 Pa.Code §§ 7.91 and 7.125; and two prohibited "razor tools" were present in the school, which the Board considers to be "gross incompetency" and/or "unethical practice" under section 13(a) of the Act, 63 P.S. § 519(a).[5] Additionally, *1008 the August 1, 2007, inspection indicated that one student had an incomplete kit and that the school had only four hairdryers instead of the required eight; three manicure tables instead of the required four; three closed containers for soiled linens instead of four; and zero timer clocks instead of the required three. (N.T., 6/20/08, Exhibit C-3.)
As a result of the three inspections, the Board filed an amended sixteen-count order to show cause, charging LT with numerous violations of the Board's regulations. LT filed an answer denying all material allegations. After an administrative hearing held on June 20, 2008, the hearing examiner recommended to the Board that all charges be dismissed. The Board issued an adjudication dismissing the charges contained in Counts 3 and 16, having found that the school had a built-in linen cabinet for clean towels since the school's original opening, (Board's Findings of Fact, No. 7), and that there was insufficient evidence to determine whether the pedicure sink alleged to have been dirty was, in fact, dirty. (Board's Findings of Fact, No. 23.) However, the Board concluded that LT was subject to discipline for all other counts and, pursuant to section 20(c.2) of the Law,[6] imposed a civil penalty of $2,950.[7]

Razor Tools
On appeal to this court,[8] LT first argues that the Board's finding that LT committed unethical practices through the use of razor blade tools at School One was unsupported by substantial evidence. We disagree.
At the hearing, Slavin and Krystopa both testified that they found two razor tools in a plastic tray, along with a pumice stone and rough sponges. (N.T., 6/20/08, at 19, 44, 46-47.) When asked whether he saw the razor tools being used on anybody, Slavin said no, they were just sitting in a tray. (Id. at 30.) When asked if the school authorized students to use the razor tools, Slavin replied, "I have no idea what the school authorizes." (Id.) LT, on the other hand, provided the testimony of Idamir Santiago, who stated that nobody is permitted to use razor tools and that she had never seen anyone using them. (Id. at 173-74.) Santiago further testified that every Tuesday is "personal day" for the students to practice hairstyling, pedicures and manicures on each other, but not on customers, leaving open the possibility that the students brought the razor tools to the school and used them on each other. (Id.)
Based on this evidence, the Board found that two razor tools were present in the *1009 school, (Board's Findings of Fact, No. 21), and concluded that LT was "subject to discipline ... because [LT] taught cosmetology in a grossly incompetent or unethical manner ... by using razor tools." (Board's Conclusions of Law, No. 15.) In its discussion of this issue, the Board stated that it "infers from the open presence of these items in the clinical area of the school, with other items used to perform pedicures, that the razor scraper tools were used on clients and that students were instructed in their use." (Board's Op. at 28.)
LT does not dispute that the razors tools were present at the school. However, LT disputes that there was any evidence that the razor tools were being used at the school because Slavin specifically testified that he did not see the tools being used, did not know if they had been used, and did not know if LT authorized their use. Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. 3D Trucking Company, Inc. v. Workers' Compensation Appeal Board (Fine and Anthony Holdings International), 921 A.2d 1281, 1288 (Pa.Cmwlth.2007). In the course of performing a substantial evidence analysis, this court must view the evidence in the light most favorable to the prevailing party. Id. Moreover, we are to draw all reasonable inferences that can be drawn from the evidence in support of the factfinder's decision in favor of the prevailing party. Id.
Here, the evidence is undisputed that the two razor tools were present in the school, along with other pedicure-related articles. It is reasonable to infer from the presence of these tools that they were being used in the school and that students were being instructed on their use. Therefore, we will not overturn the Board's conclusion that the tools were being used in the school, and we affirm the Board's decision to fine LT $500 for each razor tool found.

Minimum-Required Equipment
Next, LT argues that the Board's findings that LT did not have the minimum-required equipment were not based on substantial evidence. We agree.
With regard to the August 11, 2006, inspection of School One, both Slavin and Krystopa testified that the school was short four closed containers for soiled towels, three closed waste containers, one closed container for clean towels, and three timer clocks. (N.T., 6/20/08, at 12, 40.) Kathleen Trinh, on the other hand, testified that she always had four closed containers for soiled towels, three "next to each other right next to the shampoo bowls," and a fourth at the facial station. (Id. at 84.) She testified that the school had four closed waste containers by the manicuring stations and that timers were always available to the students. Kathleen Trinh stated that she orders timers in cases of twelve, and she produced a receipt showing that she purchased twelve timers on June 6, 2006, and twelve more on May 4, 2007. (Id. at 85-86, 120.) When asked if she tried to explain to the inspectors where the allegedly missing items were, she indicated that they would not let her show them. (Id. at 86.)
LT also presented the testimony of Lauren Bethea, a customer who was present at the school during the August 11, 2006, inspection. According to Bethea, both inspectors were "abrasive and arrogant and rude" to Kathleen Trinh. Bethea stated that Kathleen Trinh was trying to explain where various items were, but the inspectors "did not give her the opportunity to respond completely and fully." (Id.)
*1010 On cross-examination, even Slavin himself acknowledged that he was not willing to search for any equipment:
Q. When you wrote up there was items [sic] missing, did [Kathleen Trinh] attempt to tell you where these items were?
A. If they weren't in the school, I didn't have time to  they wanted to tell me that they were in another room or in the basement. They weren't readily available to the students.
Q. Okay. But you wouldn't even look where they were, correct?
A. That's correct.
(Id. at 25.)
With regard to the July 27, 2007, inspection of School One, Slavin and Krystopa both testified that the school had only five hairdryers instead of the required eight. (Id. at 14, 42.) According to Kathleen Trinh, however, there were eight hairdryers, and she introduced into evidence a picture taken immediately after the inspectors left on July 27, 2007, showing all eight hair dryers. (Id. at 95.) She testified that she could not keep all eight hairdryers together because it caused electrical problems but that the school had hairdryers "all over the place." (Id. at 95-96.)
With regard to the August 1, 2007, inspection of School Two, Slavin testified that the school had only four hairdryers instead of the required eight; three manicure tables instead of the required four; three closed containers for soiled linens instead of four; and no timer clocks at all. (Id. at 19.) Slavin acknowledged that there were two timer clocks in the office on the second floor but stated that he would not count them because the main salon area of the school was on the first floor. (Id.) Slavin further testified that Lan Trinh told him that some of the missing equipment was "somewhere in the school but not readily available to the students and not available to the inspectors when we went looking around for the equipment. We could not find it." (Id.) However, Slavin testified that School Two had only two floors, (Id. at 34), whereas Lan Trinh testified that School Two has three floors. (Id. at 130.)
Lan Trinh testified that she had eight hairdryers on August 11, 2007, and that, "I want to show, and they just don't look. They just say that, you know, they don't want to see it, you know. I did ask them. I even open the door for them to see where I put the dryer. They don't even pay no mind on it." (Id. at 128.) Lan Trinh further testified that she had four manicure tables and four closed containers for dirty towels. (Id. at 128, 132-33.) With regard to the manicure tables, Lan Trinh stated that, "We have four. We show him, and he don't want to look at it." (Id. at 133.) She had a photograph of two large manicure tables and two small ones. (Id. at 134.) With regard to timer clocks, Lan Trinh testified that,
that time he asked for the timer clock, and then I told him that I have five in the office and two in the  you know, on the receptionist. And he just say that, oh, you took this one from the office. I say it doesn't matter. It's still in the same building we're using it because office and the class is right here.
(Id. at 136.)
LT also presented the testimony of Aleksey Semenyuk, a legal secretary from the Law Offices of Gallagher, Malloy & Georges, who had been asked by LT to witness the inspection of School Two. He testified that he arrived as the inspectors were leaving and that immediately after the inspectors left, he and Kathleen Trinh were able to gather and photograph all equipment that the inspection report said was missing. (Id. at 192.) According to *1011 Semenyuk, the hairdryers were on the first and third floors of the school. (Id. at 188.) Semenyuk took photographs of the equipment and prepared a report of what he found, which included even more than what was required: ten hairdryers, five manicure tables (two large and three folding), four closed containers for soiled towels and three timer clocks. (Id. at 184-85.)
The Board accepted the testimony of Slavin and Krystopa as credible and rejected the testimony of Kathleen Trinh because "[t]he inspectors have no financial interest or other conflict in the outcome of this case, where[as] Kathleen Trinh does. Thus the Board believes their testimony to be less prone to bias."[9] (Board's Op. at 15.) The Board rejected Bethea's testimony that the inspectors were rude as not "probative" because "tension is natural when an inspection discovers problems." (Id. at 16.) The Board also dismissed the testimony of Lan Trinh and Semenyuk as "inherently biased," noting that Lan Trinh was a co-owner of LT and Semenyuk was "an employee of [LT's] law firm and present at the school only upon [LT's] counsel's instructions." (Id. at 26.)
As the factfinder, the Board is responsible for making determinations of credibility and may accept or reject the testimony of any witness in whole or in part. See Peak v. Unemployment Compensation Board of Review, 509 Pa. 267, 501 A.2d 1383 (1985). However, as the burdened party, the Board must meet both: (1) its burden of production, i.e., present sufficient evidence; and (2) its burden of persuasion, i.e., present credible evidence. Kirkwood v. Unemployment Compensation Board of Review, 106 Pa. Cmwlth. 92, 525 A.2d 841, 844 (1987). The question of whether the Board's evidence is sufficient is wholly a question of law. Id.
After reviewing the record in this case, we conclude that the evidence presented by the Board is insufficient as a matter of law to demonstrate that LT lacked any of the requisite equipment on any of the three separate inspections.
Slavin himself admitted that he was not willing to look around at all for any equipment. His own testimony, therefore, corroborates the testimony of Kathleen Trinh, Lan Trinh and Bethea that the inspectors refused to look for any equipment that was not immediately visible, and the inspectors refused to give Kathleen Trinh and Lan Trinh an opportunity to point out the location of the equipment. Nor did Krystopa, who was new to the job and considered Slavin his "mentor," testify that he was willing to inspect any equipment that was not openly visible. (N.T., 6/20/08, at 52). Therefore, we conclude that Slavin and Krystopa's testimony that the equipment was missing was legally insufficient to support the conclusion that it was not there.[10]
Slavin declared more than once during his testimony that equipment was *1012 not "readily available to the students," (N.T., 6/20/08, at 19, 25), and he admitted that he refused to count the two timer clocks that Lan Trinh produced from the office. (Id. at 19). His own testimony makes it clear that he was not going to look very hard for anything at all. However, 49 Pa.Code § 7.114(a), the Board regulation that LT purportedly violated, provides only that: "A school enrolling 25 students or less must have, at a minimum, the following equipment. ..." See supra note 2. This regulation does not say that the students must have each item of equipment readily available to them at all times, that the inspectors should be able to locate each and every item in the school without assistance, or that any of the items must be located in a particular area of the school.
Indeed, the Board found that, "[f]or the purpose of staging the photograph, Kathleen Trinh pulled together the hair dryers from around the school." (Board's Op. at 18.) This statement itself acknowledges that Kathleen Trinh had eight hairdryers in the school that day. Again, we note that 49 Pa.Code § 7.114(a)(2) requires only that the school has eight hairdryers, not that all eight hairdryers be located in the same room.
For all of the above reasons, we conclude that the Board did not provide sufficient evidence that LT violated 49 Pa.Code § 7.114(a) in any way, and we reverse that portion of the Board's decision assessing a civil penalty of $1,100 for missing equipment.

Student Kits
Next, LT argues that the Board's finding that LT supplied students with incomplete kits in violation of 49 Pa. Code § 7.115 was not supported by substantial evidence and that LT's due process rights were violated because neither the inspection reports nor the inspectors themselves were able to indicate which students had incomplete kits.[11] We agree.
Slavin and Krystopa testified that four of the fourteen students at School One had incomplete kits at the July 27, 2007, inspection. (N.T., 6/20/08, at 15, 42.) Regarding the August 1, 2007, inspection of School Two, Slavin testified that two students had incomplete kits, (Id. at 19), whereas Krystopa testified that only one student had an incomplete kit. (Id. at 44-47.) Neither inspector could provide the names of any of the students who had incomplete kits, nor could they explain which items were missing from each of the student kits.
Kathleen Trinh testified that, during the time the inspectors were examining the students' kits at School One, she was not notified that anyone's kit was incomplete. (Id. at 88.) She further testified that, at the end of the inspection, Slavin notified her that one student was missing equipment, and that he pointed to the name of a student, Raysas Feliz. (Id.) Feliz, however, testified that her kit was complete upon inspection that day. (Id. at 164-65.) Lan Trinh testified that the inspectors did not tell her the names of anyone who had an incomplete kit during the inspection of School Two, and, moreover, that if somebody had an incomplete kit, she could have completed it with available supplies. (Id. at 137.)
*1013 Based on this testimony, the Board stated that it was
left to make a credibility determination between the testimony presented by the [Board] and that of [LT]. The Board finds the inspectors more credible. While the precise details of which items were missing from kits is difficult to discern, to say the least, the Board is far more concerned that the school was not able to demonstrate to the inspectors that the required kits were present. [LT's] witnesses, Kathleen Trinh and Feliz, did not adequately or credibly refute the Inspectors [sic] testimony. Kathleen Trinh as co-owner in [LT's] business is an interested party. ... Since four kits were reported to be incomplete, the claim that Feliz's kit was mistakenly found to be incomplete, even if true, does not excuse the incompleteness of the other three kits.
(Board's Op. at 22-23.)
The fact that the two inspectors could not say who was missing items from their kits and which items were missing causes this court to conclude that the Board did not meet its burden of proving that any students had incomplete kits. Moreover, we agree with LT that LT was not given sufficient information in order to prepare a defense, in violation of LT's procedural due process rights. Procedural due process requires that an individual be given adequate notice of the charges against the individual and an opportunity to be heard. Adequate notice for procedural due process purposes requires, at a minimum, that the notice contain a sufficient listing and explanation of the charges against a person, so that he or she may prepare an adequate defense. Gombach v. Department of State, Bureau of Commissions, Elections & Legislation, 692 A.2d 1127, 1130 (Pa.Cmwlth.1997). Here, it is obvious that LT was never apprised of which students had incomplete kits or what equipment was missing from the kits. As a result, LT had no way to defend against the inspectors' bald allegations that some student kits were incomplete.
The manifest unfairness with which the Board has treated LT with regard to the student kits is evident from the Board's own words that: "Kathleen Trinh and Feliz, did not adequately or credibly refute the Inspectors [sic] testimony" and "the claim that Feliz's kit was mistakenly found to be incomplete, even if true, does not excuse the incompleteness of the other three kits." (Board's Op. at 22-23.) Without knowing which students were accused of having incomplete kits, LT could not possibly refute the inspectors' testimony. This is precisely the kind of unfairness that the constitutional principle of due process is designed to guard against.
Accordingly, we reverse that portion of the Board's decision imposing a civil penalty of $250 for incomplete student kits.

Unlicensed Teacher
Next, LT argues that the Board's finding that LT employed an unlicensed teacher in violation of 63 P.S. § 508 (prohibiting the practice or teaching of cosmetology without a license) and 49 Pa.Code § 7.118 (requiring teachers in cosmetology schools to have a current license) was not based on substantial evidence. We disagree.
Slavin testified that he observed Idamir Santiago, an employee of LT who was a licensed cosmetologist but not a licensed teacher, teaching students at School Two. (N.T., 6/20/08, at 16-17.) Lan Trinh and Santiago, however, denied that Santiago was employed as a teacher. (Id. at 138-139, 169-171.) Rather, Lan Trinh testified that Santiago was a student teacher employed predominantly as a translator because the school had many Spanish-speaking *1014 students who did not understand English. (Id. at 138.) Lan Trinh also testified that Santiago wore a black smock and that, at School Two, students wore blue smocks, student teachers wore black, and teachers wore white. (Id. at 139.)
However, the Board found Slavin's testimony more credible than that of Lan Trinh and Santiago. Slavin testified that:
I personally had gone to a classroom and observed a female teaching a class. Her name was  last name was Santiago. I asked this person if she was teaching. She said yes. I asked her for her teaching license. She could only present me with a wallet card of her cosmetology license. ... [Santiago] was standing at the front of the class, reading from a book, dressed in a smock different than that of the students. There was [sic] five students in the classroom at the time. They were sitting down, facing her.
(Id. at 16-17.) One could reasonably conclude from Slavin's testimony that Santiago was teaching. Accordingly, we affirm that portion of the Board's decision imposing a civil penalty in the amount of $500 for employing an unlicensed teacher.

Failure to Post Sign
LT's final argument is that the Board's finding that School Two did not have the required sign posted at the entrance to the school was not supported by substantial evidence. We disagree.
Slavin and Krystopa both testified that the necessary sign was not displayed at the entrance of the school. (Id. at 18, 44.) Lan Trinh, on the other hand, testified that there was a sign at the entrance to the school placed there even before the school opened and that it was never taken down. (Id. at 127.)
The Board credited the testimony of Slavin and Krystopa over that of Lan Trinh on the issue of the sign. Such testimony was sufficient for the Board to conclude that the sign was not there.[12] Accordingly, we affirm that portion of the Board's decision imposing a civil penalty of $100.

ORDER
AND NOW, this 28th day of January, 2011, the order of the State Board of Cosmetology, dated April 19, 2010, is hereby affirmed insofar as it imposes a civil penalty of $1,000 for the presence of razor tools in the school, a civil penalty of $500 for employing an unlicensed teacher and a civil penalty of $100 for failure to post the required sign. The order is reversed in all other respects.
NOTES
[1] Act of May 3, 1933, P.L. 242, as amended, 63 P.S. §§ 507-527.
[2] 49 Pa.Code § 7.114(a) provides in pertinent part that:

A school enrolling 25 students or less must have, at a minimum, the following equipment:
. . .
(2) Eight hair dryers.
(3) Four manicure tables and chairs.
. . .
(11) Four closed containers for soiled linen.
(12) Three closed waste containers.
. . .
(16) One linen cabinet.
. . .
(18) Three timer clocks.
[3] 49 Pa.Code § 7.115(a) provides:

A school shall ensure that each cosmetology student possesses and maintains in sanitary condition the following:
(1) One shampoo cape.
(2) One pair of scissors.
(3) One hair cutting razor.
(4) Two brushes.
(5) Six combs.
(6) A minimum of 100 pin curl clips.
(7) Complete tools for nail technology, including emery boards, pusher and brush.
(8) A carrying case of sufficient size to accommodate the equipment and supplies used by the student.
(9) A basic cosmetology text book. A book of questions and answers is not considered a textbook.
(10) One pair of tweezers.
[4] 49 Pa.Code § 7.120(b) provides that:

A school that permits its students to work on the public shall display in a conspicuous place at the entrance to the school a sign with letters at least 2 inches in height, that states the following: "ALL WORK IN THE SCHOOL DONE BY STUDENTS ONLY" and "CHARGES FOR REASONABLE COST OF MATERIALS ONLY."
[5] 63 P.S. § 519(a) (emphasis added) provides:

(a) The board shall have the power to refuse, revoke, refuse to renew or suspend licenses, upon due hearing, on proof of violation of any provisions of this act, or the rules and regulations established by the board under this act, or for gross incompetency or dishonest or unethical practices, or for failing to submit to an inspection of a licensee's salon during the business hours of the salon and shall have the power to require the attendance of witnesses and the production of such books, records, and papers as may be necessary. Before any licenses shall be suspended or revoked for any of the reasons contained in this section, the holder thereof shall have notice in writing of the charge or charges against him or her and shall, at a day specified in said notice, be given a public hearing before a duly authorized representative of the board with a full opportunity to produce testimony in his or her behalf and to confront the witnesses against him or her. Any person whose license has been so suspended may on application to the board have the same reissued to him or her, upon satisfactory proof that the disqualification has ceased.
[6] Section 20(c.2) of the Law, 63 P.S. § 526(c.2), provides in pertinent part:

In addition to any other civil remedy or criminal penalty provided for in this act, the board ... may levy a civil penalty of up to one thousand dollars ($1,000.00) on any current licensee who violates any provisions of this act or on any person who practices cosmetology ... without being properly licensed to do so under this act.
[7] The Board fined LT $500 for each razor tool found (totaling $1,000); $50 for each missing item (totaling $1,100); $50 for each incomplete student kit (totaling $250); $500 for employing an unlicensed teacher; and $100 for failure to post the required student sign.
[8] Our scope of review of the Board's order is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; Ralph v. State Board of Cosmetology, 822 A.2d 131, 134 n. 4 (Pa. Cmwlth.2003).
[9] The Board did note, however, that this was Krystopa's first inspection of a beauty school and that he had asked Slavin to assist him because he was new to the job. (Board's Op. at 13.)
[10] Slavin and Krystopa indicated in their August 11, 2006, inspection report that School One did not have a closed container for clean towels. The Board found, however, that School One did, in fact, have a built-in linen cabinet, (Board's Findings of Fact, No. 7), because "such a cabinet would have been required in order for the school to pass its inspection upon opening," (Board's Op. at 17). Although it is not this court's function to make credibility determinations, we cannot help noticing that if Slavin, who by his own admission, was not looking for things very carefully, overlooked a built-in linen closet on August 11, 2006, there is a good possibility that he and Krystopa overlooked other equipment as well.
[11] The Board argues in its brief that LT waived this due process argument by failing to develop it in its brief. (Board's Brief at 24.) We disagree. LT's brief states that LT "was not granted sufficient information to present a defense to this matter in violation of its due process rights." (LT's Brief at 11.) This court finds that the violation of due process is glaringly obvious in this case, and, therefore, this simple assertion by LT is sufficient for this court to perform meaningful appellate review of the issue.
[12] We strongly disapprove, however, of the Board's policy of accepting the testimony of Slavin and Krystopa over that of LT's witnesses purely because Slavin and Krystopa have no financial interest in the outcome of the case, whereas LT's witnesses do. Under such rationale, no defendant accused by the Board of any violation of the Law or the Board's regulations could ever defeat the charge.